## Bruzas v. Sellersville National Bank.

*Harry E. Grim,* for plaintiff in interpleader.
*Thomas Ross,* for defendant in interpleader.

BOYER, J., November 17, 1930.—A writ of fieri facias, No. 42, September Term, 1926, was issued against Frank Bruzas, under which the sheriff levied upon personal property consisting principally of farm stock, together with a small amount of household goods, as the property of the defendant in the execution. Mary Bruzas, the plaintiff in the interpleader and wife of Frank Bruzas, the defendant in the execution, filed a property claim with the sheriff and had the goods appraised. The sheriff filed his petition for an interpleader which was duly allowed; whereupon the plaintiff, Mary Bruzas, filed her statement of claim, which is the subject of this rule or demurrer.

In her statement of claim Mary Bruzas sets forth that she and her husband purchased a farm in Bucks County, together with the farm stock then on it, and which is now a large part of the subject matter of this interpleader; that subsequently she and her husband purchased additional farm stock, she paying the money, but she and her husband taking title by agreement as tenants by the entireties; and that she is the sole and individual owner of the household goods levied on. The allegations as to the ownership of the farm stock as being held by her husband and herself as tenants by the entireties are clear and positive. It is true the introductory paragraph of her statement has a formal averment that she was and is the owner, and that her husband did not have any ownership of, or title to, the goods; and in the last paragraph there is another formal averment to the same effect.

The defendant demurs to so much of the statement as avers title to the farm stock being in Mary Bruzas, individually, and in Mary Bruzas and her husband as tenants by the entireties.

It is not very clear to the court as to the specific grounds for the demurrer, but apparently the defendant takes the position that unless the property was plaintiff's sole and exclusive property, she had no right to claim the property under a sheriff's interpleader; and that, while she avers specifically that she was the owner, her statement shows that in fact she owned the goods as tenant by the entireties with her husband, the defendant in the execution, and being such owner by the entireties, she has no standing to claim the property under the Sheriff's Interpleader Act of May 26, 1897, P. L. 95, and its amendments. If this is a correct understanding of the defendant's demurrer, then two questions are involved: namely, what is the averment of title in the plaintiff's statement; and, second, if it is an averment of tenancy by the entireties, has the plaintiff any standing to assert her title to proceed under the Sheriff's Interpleader Act.

It is true that the introductory paragraph of the statement of title, which is not a numbered paragraph, is a formal statement of title to the goods and chattels in the plaintiff herself and a denial of title in her husband, and this allegation and denial are again repeated in the last paragraph. In the intervening paragraphs, the plaintiff asserts and in detail describes the source of her title or interest in the goods levied on. These latter averments are entirely informal, and, in the opinion of the court, are intended as a full and informal explanation of the formal averments contained in the first and last paragraphs. Presumably, the pleader deemed it necessary to make such formal allegation in the first place in order to bring himself within the provisions of the Interpleader Act. It will be noted that the first paragraph, after the formal averments, adds, "and she sets forth the source of her title as follows:" This leads the court to the conclusion that the averments were not intended to be contradictory, but what follows the first paragraph is explanatory of its averments. No one reading the statement of claim and considering it as a whole could doubt but that the plaintiff claimed and intended to claim title as a tenant by the entireties. The denial of her husband's title, viz., "at that time Frank Bruzas did not have any ownership or title thereto," may reasonably be taken to mean that he did not have such a title, ownership, right or interest as was subject to levy and sale under execution. The statement, therefore, will be considered in that light exclusively.

This brings us to the consideration of the other phase of the case: namely, the standing of one of two tenants by the entireties to assert title to the goods levied upon, against the plaintiff in the execution, under the provisions of the Sheriff's Interpleader Act of 1897. Section one of the Act of May 26, 1897, P. L. 95, provides as follows: "That whenever goods or chattels have been levied upon or seized by the sheriff of any county under any execution or attachment process issued out of any court of this Commonwealth, and the sheriff has been notified that said goods and chattels, or any part of them, belong to any person or persons other than the defendant or defendants in said execution or process, said sheriff shall enter a rule in the court out of which said execution or process issued on the supposed owner (hereinafter called the claimant), to show cause why an issue should not be framed to determine the ownership of said goods and chattels; notice of said rule shall be given to the plaintiff and defendant in said execution or process, the claimant, and the person or persons found in possession of the goods and chattels levied upon or seized." It will be noted that this section refers to the goods *belonging* to any person other than the defendant, and that the sheriff shall enter a rule on the supposed *"owner* (hereinafter called the *claimant)"* to determine the *"ownership."* Section two refers to claimant's *"title* to said

goods." Section three of the act refers to "the *right* or *title* to said goods." Section ten provides that the issue shall consist of a concise statement of the source of the claimant's *title* and an affidavit by the plaintiff that the *title* of the claimant therein is invalid. Section fifteen of the act provides, that if the sheriff complies with the provisions of the act he shall be free from all liability to the claimant, the plaintiff and defendant in the execution, the person found in the possession of the goods and every other person who had knowledge of the levy. All of these terms and expressions used in the act, together with such of its purposes as are expressed in section fifteen, necessarily lead to the conclusion that the act was intended to cover and afford relief in all cases in which any and every claimant of the goods who is not a party to the execution has a right, title or interest which is superior to that of the defendant in the execution, and which would be sufficient to bar a sale of the goods levied upon. We know of no decision or authority as to whether the title or interest of a tenant by the entireties is sufficient to entitle him or her to the benefits of the act. Neither have counsel referred us to any such authority, and we may assume that the question has never been decided.

That husband and wife may hold personal property as tenants by the entireties as well as real estate is fully settled in this state: Bramberry's Estate, 156 Pa. 628; Parry's Estate, 188 Pa. 33.

It is equally well settled, since the decision of the Supreme Court in the case of Beihl *v.* Martin, 236 Pa. 519, that while a judgment creditor may secure and maintain a lien against the interest of one of the tenants by the entireties of real estate until it ripens into an absolute estate by the survivorship of such tenant, the judgment creditor cannot attach, levy on or sell the interest during the lifetime of the cotenant. That case has been recognized and followed in many Supreme and Superior Court cases since it was handed down in 1922. The Supreme Court in its exhaustive opinion says (p. 523): "For convenience of illustration take the case of a husband. Towards everybody in the world except the wife he has exclusive possession during her lifetime, and his right to the enjoyment of the estate during this period may not be interfered with at the suit of his creditor. So much is conceded, and has been expressly decided by this court in a number of cases, notably in McCurdy *v.* Canning, 64 Pa. 39. With possession denied a purchaser at an enforced sale during the joint life of the parties to the estate, what is there to acquire by purchase? Nothing but a bare expectancy, a chance that the husband may survive the wife and have the entirety to himself. May that expectancy be made the subject of a judicial sale? Certainly never up to this time have we said that it can be. . . .

"This case [Fleek *v.* Zillhaver, 117 Pa. 213] stands as authority with respect to what it expressly rules, viz: that the interest of husband and wife where they hold by entireties may be the subject of lien, and that upon the death of either the lien against the survivor may be enforced. It is to be observed that it does not rule that there can be a severance in ownership in any other way than by the death of one or other of the parties, or by voluntary alienation by both. . . . Now, stating it broadly but correctly, nothing can be taken in execution and sold as the property of a debtor except property over which the debtor has the right of disposition by sale or otherwise. If then the husband cannot sell or dispose of his expectancy of survivorship, it follows that it may not be taken in execution . . . 'The weight of authority founded as we think upon the better reasoning, is that such acts (the reference being to enabling acts with respect to rights of property in married women) . . . have the effect of freeing the wife's property from any liability to his creditors, and that, therefore, her rights to the possession and enjoy-

ment of property held in common with her husband by entirety cannot in any way be interfered with by his creditors; and hence the entire property, during their joint lives, is free from judgment or execution lien directed against either of them.' "

We have quoted at length from this case not only because it is a leading case, but because it so clearly decides that the interest of either spouse, during the life of the other spouse, is merely an "expectancy of survivorship" and may not be taken in execution for the debt of one tenant only. It settles beyond question the proposition that the rights to the possession and enjoyment of property held in common by husband and wife cannot in any way be interfered with by the creditors of either, and that, therefore, the entire property during their joint lives is free from execution directed against either. While that case related to real estate, the language of the court is very general and sweeping. We can conceive of no reason why the same rule should not apply literally to a case involving personal property. In fact, it is not contended that there is any distinction. Assuming, then, that these chattels were owned by the plaintiff and her husband as tenants by the entireties, we conclude that the defendant in the execution had no interest in the property which could be levied upon and sold in execution for his separate debt.

The nature and incidents of the estate by entireties are too well known to' require any discussion. Each tenant is seized *per tout et non per my;* that is, each is seized of the entire estate and each is the owner of the entire property in all its parts. We, therefore, have a case where the plaintiff in the interpleader is seized in her own right of the entire estate or title to the goods and chattels in question and where the defendant in the execution has no right, title or interest in the goods which is subject to a levy and execution. Stating the case in this way, there would seem to be no reason why her claim should not come within the provisions of the Sheriff's Interpleader Act. Is there anything in the interpleader act itself or in its general purpose which would compel the conclusion that it was not intended to include such a case? The act itself is remedial and has been extremely beneficent in its application. Not only does it protect the sheriff from liability to, and annoyance and hazard from, suits on the part of the plaintiff and defendant in the execution or third parties claiming the goods, but it has removed the necessity of suits between the contending parties, replevin against the purchaser, and the hazard of purchasers at sheriff's sales losing their property. It has further simplified and made certain the remedy of various claimants of title to property sold at sheriff's sales. Sound reason and common sense would seem to require a liberal construction of the act in order to carry out its evident and useful purposes. What good reason could there be for refusing to have the claims of a tenant by the entireties adjudicated by a proceeding under this act? We know of no good reason, nor has any been advanced by counsel for the defendant.

The defendant, however, contends in its argument that the proceeding was not properly brought because the claimant sues alone, and her husband, her cotenant, does not claim with her. Here, again, we do not see what necessity or useful purpose there could be for the cotenant joining. The plaintiff's title is complete. She is seized of the entire estate, including the right of possession, and her title would not be any more complete if her husband did join her in the suit. On the other hand, it might be inconsistent for the husband to join, assuming that he were willing to do so, as he is the defendant in the execution. His joining in the suit would necessitate the declaration on his part that he is not the owner of the goods levied on and at the same time that he is the owner. To say that the cotenant must join in such a claim would

138

put it in the power of either spouse to destroy the estate by entireties in personal property by confessing judgment and then refusing to join in an interpleader proceeding to save the property from execution.

Undoubtedly a spouse has such an interest in personal property owned as tenant by the entireties as to entitle her to defend that right against strangers, for not only is she seized of the entire estate, but she has such an expectancy of survivorship as should entitle her to defend against the execution. It must be remembered that this is not a suit by this plaintiff against the defendant, but, in effect, the plaintiff is defending her title against execution creditors of another, assuming, of course, that she has the title she asserts. The reason for requiring joint claimants against a defendant on the same cause of action to unite in their suit is to prevent a second claim and judgment against the defendant for the same thing. In this case, there could be no danger of a second claim by the husband, and, therefore, there could be no reason for his joining in this proceeding. See Gasner *v.* Pierce, 286 Pa. 529; Futer *v.* Futer, 12 D. & C. 805; O'Malley *v.* O'Malley, 272 Pa. 528; Krizovenisky *v.* Krizovenisky, 22 Berks 84.

For these reasons we conclude that the statement of claim sets forth title in the plaintiff to the farm stock as a tenant by the entireties; that her husband did not have such a title or interest in those goods as could be levied upon under execution; and that the plaintiff had such an ownership and interest as to entitle her to claim them by a proceeding under the Sheriff's Interpleader Act.

Now, therefore, November 17, 1930, the rule for judgment is discharged, with leave to the defendant to file an affidavit of defense as to the facts within fifteen days from this date.

From Isaac J. Vanartsdalen, Doylestown, Pa.